**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 94-127-3** |
| | : | |
| **FRANK MARTINES** | : | |

# MEMORANDUM

**KEARNEY, J.** **March 21, 2022**

Our jury convicted Frank Martines on eight counts of racketeering crimes relating to his significant role in murders, attempted murders, and extortions effected by Philadelphia's La Cosa Nostra Enterprise led by John Stanfa in the early 1990s. Judge Buckwalter sentenced then forty-one-year-old Mr. Martines to life in prison. Mr. Martines now moves for compassionate release for a second time after we denied his first motion in January 2021. He today cites back and neck pain along with surgery earlier this year, a prison Summary Reentry Plan – Progress Report and letters from family and friends, demonstrating his continued rehabilitation, and a Bureau of Prisons risk assessment tool showing a minimal recidivism score. We commend Mr. Martines on his continued efforts to rehabilitate during his life sentence. But we must defer to Judge Buckwalter's final sentence absent an extraordinary and compelling reason. Mr. Martines's present health and age do not warrant a change in Judge Buckwalter's sentence. Even if we could opine his medical condition warrants release, we would not release Mr. Martines after balancing Congress's sentencing factors at this stage. Congress, not us, defines the parameters of mercy from a final sentence. Mr. Martines does not meet those standards today. We deny Mr. Martines's renewed motion for compassionate release without prejudice should he later be able to show extraordinary and compelling reasons and his release would then be consistent with federal sentencing policy.

## I.   Background

Philadelphian Frank Martines worked hard from a young age, learned carpentry, married his long-time girlfriend, raised a son with attention to his physical and intellectual growth in Bucks County, took second jobs to support his immediate and extended family, and supported those in need. But he then chose in his mid-thirties to become a high-ranking member of Philadelphia's La Cosa Nostra Enterprise led by John Stanfa.[1] The Enterprise operated under a chain of command headed by a "boss."[2] A witness subject to cross-examination swore Mr. Martines functioned as the "acting underboss" – number two in the chain of command – after someone shot and incapacitated the previous underboss.[3] Mr. Martines did not make one or two bad choices; he did not limit his crimes to one or two acts. He made several daily choices to engage in organized crime. He, among other things, organized and participated in a plot to murder several members of a rival La Cosa Nostra faction headed by Joseph Merlino.[4] The evidence included Mr. Martines recruiting individuals to be on various "hit" teams, provided his associates with weapons to carry out various murders including bombs and handguns, and carried out violent acts himself.[5]

Mr. Martines entered custody after a March 16, 1994 arrest. Our grand jury returned a second superseding indictment charging then forty-one-year-old Mr. Martines and seventeen other members of the Enterprise for engaging in organized crime under the Racketeer Influenced and Corrupt Organization Act.[6] Our grand jury specifically charged Mr. Martines in eight of the thirteen counts; his charged conduct related to two murders, seven attempted murders, conspiracy to commit murder, conspiracy to extort "street tax" and protection money from legitimate businesses, extortion of several individuals and businesses including a New Jersey police detective, and the operation of an illegal gambling business.[7] A jury found Mr. Martines guilty on

all counts. In July 1996, Judge Buckwalter sentenced Mr. Martines to life imprisonment. Mr. Martines is currently serving his life sentence at the medium security facility of FCI Allenwood.

***We denied Mr. Martines's January 2021 motion for reduced sentence.***

Sixty-seven-year-old Mr. Martines moved to reduce his sentence to time served in mid-January 2021. He argued his age and medical conditions put him at high risk for complications for COVID-19 constituting extraordinary and compelling reasons for a reduction in sentence.[8] Mr. Martines showed us he suffered from hypertension and unresolved respiratory issues.

He also then argued Congress's sentencing factors at 18 U.S.C. § 3553(a) require we reduce his sentence. He cited educational courses taken in prison including courses in anatomy, behavior modification, history, automotive services, and wellness for adults fifty years of age and older.[9] He completed Evidence-Based Recidivism Reduction Programs and the CODE/Challenge Program, a nine-month intensive residential treatment program designed to facilitate institutional adjustment and reintegration into the community.[10] He submitted letters from prison staff showing his work as an orderly and in the prison's recreation department and good behavior in those positions.[11] He submitted letters from friends and family attesting to his good character and in support of release.[12] His disciplinary record confirmed two infractions; one in 1994 for possession of drugs and the other in 2018 for fighting.[13]

We considered Mr. Martines's January 2021 motion and supporting documents. We denied his motion without prejudice, finding his age and medical conditions did not present extraordinary and compelling reasons for early release and, even assuming Mr. Martines presented extraordinary and compelling reasons for release, the section 3553(a) factors weigh against release.[14]

***Mr. Martines's present medical condition.***

Vaccines and our society's efforts at mitigation began to lessen the fatal effects of COVID-19 by mid-2021. The Bureau of Prisons has vaccinated Mr. Martines. But he has now suffered pain in his neck and back. The Bureau of Prisons began prescribing Mr. Martines oxycodone for chronic unremitting pain from spinal stenosis of the cervical region in October 2021 after a course of Tylenol with codeine did little to improve his pain.[15] The Bureau of Prisons provided a neurosurgical follow-up examination on November 2, 2021 following Mr. Martines's complaint of worsening neck pain with bilateral radicular arm pain and weakness with new worsening atrophy.[16] Mr. Martines underwent a cervical laminectomy of C2–C6 in 2010.[17] The examiner noted: "I have seen him in the past to discuss an extension of his lumbar fusion but at this time he will need cervical intervention first."[18] The examiner noted: an earlier examination with orthopedic surgeon Dr. DiSimone "to discuss a fusion of T11-S1 due to [Mr. Martines's] worsening low back pain and bilateral leg pain"; "worsening neck paid and bilateral arm pain with weakness"; a history of "posterior cervical laminectomy …"; a "CT scan of the cervical spine which did show worsening degenerative changes"; and Mr. Martines's request to discuss surgical options for his neck and low back.[19]

The November 2, 2021 neurosurgery exam noted an April 14, 2021 myelogram[20] of the lumbar spine revealed stable fusion at L4-5; multilevel degenerative disc disease; and multilevel spondylolisthesis[21] with moderate canal stenosis most severe at T12-L4.[22] The assessment and plan noted Mr. Martines "will need a follow up with Dr. DiSimone to discuss extension of his fusion, we would most likely performed [sic] a decompressive thoraco/lumbar laminectomy with possible discectomy of T11-S1 with fusion and possible additional levels as needed."[23] There is

nothing in the medical records provided by the parties showing the re-scheduling of the surgical plan noted in the November 2, 2021 exam.

The Bureau of Prisons arranged for Mr. Martines to undergo a spine anterior cervical discectomy and fusion on January 19, 2022 to treat cervical herniated discs at C3-4, C4-5, C5-6, C6-7, C7-T1; cervical pain; cervical radiculopathy;[24] cervical myelomalacia;[25] cervical kyphosis;[26] and calcified C6-C7 disc.[27] A Bureau of Prisons nurse practitioner noted during a January 21, 2022 follow-up visit: "Overall [Mr. Martines] is doing well and reports improvement in neck and right hand/arm pain. He reports that he is having intermittent muscle spasms throughout the day. …"[28]

Dr. DiSimone examined Mr. Martines in a post-surgical follow-up appointment on January 24, 2022.[29] Dr. DiSimone noted: "Most recently has had anterior cervical discectomy and fusion done by Dr. Rajjoub from which the patient is doing actually quite well. … Current symptoms depending on the day interfere with activities of daily living. Here to discuss the possibility of having an extended decompression instrumentation fusion of the lumbar spine."[30] Dr. DiSimone recommended exercise on a stationary bike for thirty to forty minutes a day, five to six days a week and occupational therapy five days a week for ninety days.[31]

Dr. DiSimone noted: "Treatment options are discussed. … Have discussed treatment of the patient's symptoms warrant [sic] and if he decides that his walking and standing intolerance is bad enough [sic]. This includes decompression instrumentation fusion."[32] In addition to recommending exercise on a stationary bike five to six days a week, Dr. DiSimone outlined a treatment plan: "Treatment options nonoperative and operative are discussed. Included in this is that of decompression instrumentation fusion. TLSO brace is being measured and delivered today. PT has been done in the past and has failed conservative measures. Current symptoms do interfere

with activities of daily living. Anticipated surgery, to be done in conjunction with Dr. Rajjoub, …
with decompression, instrumentation, and fusion as necessary T11-pelvis. Procedure and the risks
are described. … Patient understands treatment options, planned surgery, risks and wishes to think
about this and get back to us. TLSO Brace to control torso and abdomen motion for added
support."[33]

Mr. Martines contends after he recovers from the cervical discectomy and fusion to treat
the cervical herniated discs, he will undergo an earlier scheduled back surgery (postponed by the
cervical spine surgery on January 19, 2022) to treat worsening neck pain with bilateral radicular
arm pain and weakness with new worsening atrophy.[34]

## II.     Analysis

Mr. Martines asks us again to reduce his sentence as he is now a year older and cites
worsening medical conditions relating to neck and back pain resulting in recent and anticipated
surgery combined with his hypertension. Sixty-eight-year-old Mr. Martines argues his age and
medical conditions constitute extraordinary and compelling medical reasons for a reduction in
sentence, including a worsening of his medical conditions relating to his spine. Mr. Martines
interprets our memorandum denying his first motion for compassionate release as based, in part,
on our misunderstanding he suffers only from age and hypertension with fear of the risks of
COVID-19. Mr. Martines contends hypertension is not his only medical condition and he "does
not know why his complete medical situation was not brought before the Court" in January 2021
when we considered his first motion for compassionate release.[35] He argues his "actual medical
condition" presents extraordinary and compelling reasons warranting compassionate release. He
brings his renewed motion because "the Court did not have the benefit of knowing his actual
medical condition."[36]

Mr. Martines focuses our attention on his severe disc degeneration and severe spinal stenosis for which he recently underwent surgery and will have to undergo another surgery. The medical record reflects orthopedic changes in the spine. In addition to his spine health, Mr. Martines cites his medical history of a right biceps repair, a right third finger tendon release, carpal tunnel release, right ulnar transposition and contraction deformity in the right hand, and a right inguinal hernia.[37] He contends his spine is deteriorating, he is in great pain receiving only modest relief in prison, his condition is one of chronic deterioration and will not improve with age, and currently walks with the assistance of a walker.[38]

Mr. Martines cites the January 11, 2022 opinion of his former primary care physician, Dr. Codario. Mr. Martines asks we hold a hearing where Dr. Codario will offer his opinion on Mr. Martines's medical condition and diminishing ability to provide self-care in prison.[39] Dr. Codario has not treated or examined Mr. Martines in over twenty-five years since his incarceration.[40] Dr. Codario reviewed an October 6, 2015 MRI of Mr. Martines's lumbar spine he interprets as demonstrating multi-level spinal deterioration and severe spinal stenosis requiring surgery in 2015.[41] Dr. Codario opines despite surgery, Mr. Martines's pain continued and imaging studies in April and July 2021 showed persistent and severe spinal stenosis at the cervical, lumbar, and sacral sections of the spine.[42] Dr. Codario opines as to Mr. Martines's suffering and progressive spinal deterioration over the past several years, his condition is serious, deteriorating, will not improve, will worsen as he ages, "will likely result in significant chronic pain in an environment that will not conducive to relief," and, as time goes on, it will be increasingly difficult for Mr. Martines to provide acceptable self-care in the correctional facility such as showering, hygiene, bathing, and mobility.[43] Dr. Codario requests Mr. Martines be released from prison to improve his overall life

quality. Dr. Codario's letter is dated a week before the January 19, 2022 cervical discectomy and fusion, and we are not provided with an opinion from Dr. Codario post-surgery.

Mr. Martines argues he is not a danger to the community because he saved the life of a prison guard in January 2014;[44] an April 28, 2021 Bureau of Prisons's Prison Assessment Tool Targeting Estimated Risk Needs ("PATTERN") assessed him as a minimum risk of re-offending;[45] his Summary Reentry Plan – Progress Report confirms his completion of over 1,700 hours of programming over the course of his incarceration and includes several positive comments from prison personnel;[46] he has a model prison record for twenty-six years; and multiple letters from friends and family advocate for his release.[47]

Congress allows us to exercise discretion to reduce a term of imprisonment and "impose a term of probation or supervised release with or without conditions" if, (1) the incarcerated movant meets administrative exhaustion requirements, (2) "extraordinary and compelling reasons"[48] warrant a reduction, (3) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (4) the applicable sentencing factors under 18 U.S.C. §3553(a) warrant a reduction.[49]

We are particularly mindful of the decision from our Court of Appeals in *United States v. Andrews*[50] issued after we denied Mr. Martines's first motion for compassionate release. In *Andrews*, our Court of Appeals held the Sentencing Commission's policy statement at U.S.S.G. § 1B1.13 describing "extraordinary and compelling reasons" under section 3582(c)(1)(A)(i) is not applicable and is not binding on district courts when considering prisoner-initiated (rather than Bureau of Prisons-initiated) motions for compassionate release.[51] While the Sentencing Commission's policy statement is no longer binding, our Court of Appeals directs "it still sheds

light on the meaning of extraordinary and compelling reasons" and we may use it to guide our discretion in considering compassionate release.[52]

While we are not bound today by the policy statement following *Andrews*, we may consider the Sentencing Commission's guidance describing "extraordinary and compelling reasons" based on Mr. Martines's medical condition and age. Mr. Martines does not now argue release because of an increased risk of COVID-19. His current motion is based on his deteriorating medical condition which he contends will diminish his ability to self-care in prison. Mr. Martines concedes he is not suffering from a terminal illness provided in the Medical Condition note section (A)(i). He contends he meets all three conditions in subsection (A)(ii): he is suffering from a serious physical condition; he is suffering from a serious functional impairment; and he is experiencing deteriorating physical health because of the aging process "that substantially diminishes [his] ability … to provide self-care within the environment of a correctional facility and from which he … is not expected to recover."[53]

He also argues he meets the Age Note because he is sixty-eight years old, served twenty-eight years of his life sentence, and "is experiencing a serious deterioration in physical or mental health because of the aging process."[54]

The United States disagrees. It concedes Mr. Martines "suffered" from significant neck and back pain for which he underwent corrective surgery.[55] The United States seems to suggest Mr. Martines's recent surgery corrected his neck and back pain, citing Dr. DiSimone's January 24, 2022 post-operative examination noting Mr. Martines "is doing actually quite well" and in "no acute distress."[56] But the medical records show Mr. Martines is suffering from severe spinal stenosis. While Dr. DiSimone noted Mr. Martines "is doing actually quite well" post-surgical anterior cervical discectomy and fusion, he also noted: "current symptoms depending on the day

interfere with activities of daily living"; "current symptoms do interfere with activities of daily living"; physical therapy "has been done in the past and has failed conservative measures"; and additional surgery is anticipated "with decompression, instrumentation, and fusion as necessary T11-pelvis."[57] Dr. DiSimone's January 24, 2022 examination presents a mixed picture of Mr. Martines's current medical condition.

The United States argues Mr. Martines can self-care in the correctional facility. It denies Mr. Martines's claim he uses a walker, asserting the Bureau of Prisons records show he does not use any ambulatory device. It cites a January 12, 2022 pre-operative evaluation by Bureau of Prisons Nurse Practitioner Susan Snook noting Mr. Martines is "able to perform light housework, climb a flight of stairs or walk up a hill" and "… does not use an Ambulatory Aid, has normal gait/transferring …"[58] Nurse Practitioner Snook's January 21, 2022 post-operative evaluation noted Mr. Martines "does not use an Ambulatory Aid, has normal gait/transferring, and is oriented."[59] But Bureau of Prisons's records show a Physician's Assistant ordered a 4-wheel walker for Mr. Martines on December 10, 2021 for a three-month period.[60] And Nurse Practitioner Snook also completed "Medical Duty Status" forms both before and after the January 19, 2022 cervical surgery noting a 4-wheel walker.[61] As of March 9, 2022, the prison's Medical Duty Status form notes a 4-wheel walker provided to Mr. Martines.[62]

In addition to disputing use of a walker as demonstrative of self-care, the United States argues Mr. Martines's housing in the general population and Dr. DiSimone's recommended exercise on a stationary bike show his ability to self-care.[63] Mr. Martines denies he is able to use the exercise bike and the Medical Duty Status form shows he is restricted from all sports.[64] But a November 25, 2021 Summary Reentry Plan – Progress Report (relied on by Mr. Martines to show

he is not a danger to the community) shows a restriction from sports four years ago in March 2018, suggesting this restriction is not new.[65]

The United States argues Mr. Martines's medical condition does not present an extraordinary and compelling reason for a sentence reduction. It cites Dr. Codario's report opining Mr. Martines's condition "***will***" grow worse, meaning sometime in the future, and Dr. Codario does not, and cannot, opine Mr. Martines ***currently*** cannot provide self-care. The United States concedes if his condition worsens "to the point he cannot function in the prison environment, then [Mr.] Martines may seek relief at that time."[66]

**A. Mr. Martines does not establish "extraordinary and compelling reasons" for a reduction in sentence under either the Medical Condition Note or Age Note.**

To meet the Medical Condition note, Mr. Martines must demonstrate he is (1) suffering from a serious physical or medical condition; (2) suffering from a serious functional or cognitive impairment; or (3) experiencing deteriorating physical or mental health because of the aging process substantially diminishing his ability to provide self-care in prison and from which he is not expected to recover. Mr. Martines argues he meets all three categories of medical condition which are "substantially diminishing" his ability to provide self-care at FCI Allenwood. The United States disagrees.

To meet the Age note, Mr. Martines must demonstrate he is (1) at least sixty-five years old; (2) he has served at least ten years or seventy-five percent of his term, whichever is less; and (3) is experiencing a serious deterioration in physical or mental health because of the aging process. There is no dispute Mr. Martines meets the first two elements. He appears to conflate the bases of the "serious deterioration in physical health because of the aging process" element of the Age note with the "substantially diminishing his ability to provide self-care" element of the Medical Condition note. The United States' response does not directly address the Age note.

While we are sympathetic to Mr. Martines's pain, there is nothing in the record showing a deteriorating physical condition "substantially diminishing" his ability to provide self-care at FCI Allenwood. While we have Dr. DiSimone's note Mr. Martines's symptoms interfere with activities of daily living, we do not know which activities he refers to and specifically how he is unable to self-care. Mr. Martines's former physician, Dr. Codario opines Mr. Martines's condition "will grow substantially worse as he ages, diminishing his 'ability to provide self-care within'" the prison. But this is not the ***current*** condition. Mr. Martines concedes he is currently able to wash, bathe, ambulate, and dress himself.[67] The most recent documents show he is cleared for food service work with restriction as of March 9, 2022,[68] and a March 9, 2022 evaluation by Dr. Cullen of the Bureau of Prisons notes Mr. Martines "is able to perform [activities of daily living] but uses a rolling seat walker to navigate the compound."[69] He continues with pain medication and will be followed by neurosurgery.[70] Mr. Martines's present condition does not satisfy the Medical Condition note.

We reach the same conclusion as to the Age note. Mr. Martines does not satisfy the Age note. While it appears Mr. Martines's spinal stenosis is deteriorating, we cannot find he is facing a serious deterioration of his physical health. He has had surgery to correct some of the cervical spine issues and appears to be planning on additional surgery to address problems in other areas of the spine. While spinal stenosis is a painful condition, the medical records show it is being managed by the Bureau of Prisons with medication and surgical efforts. It does not today constitute extraordinary and compelling reasons justifying compassionate release. Courts addressing spinal stenosis and associated pain have found it is not an extraordinary and compelling reason warranting a reduction in sentence.[71]

We are mindful we are not medical professionals and cannot base our analysis solely on our view of whether Mr. Martines's concededly "wide divergence of opinion concerning the seriousness of [his] condition" constitutes extraordinary and compelling reasons for compassionate release.[72] We decline Mr. Martines's request for a hearing so "the Court [can] actually take a look at him to make up its own mind" regarding his medical condition.[73] We are not medical professionals and cannot opine on his condition by "taking a look at him." The medical records are what they are and, as Mr. Martines concedes, provide a "wide divergence of opinion concerning the seriousness" of his medical condition. This only serves to bolster the United States' position, and our conclusion, Mr. Martines does not currently show extraordinary and compelling reasons for compassionate release.

**B. We decline to reduce the sentence after applying the section 3553(a) factors**.

Even if Mr. Martines demonstrated his current medical condition substantially diminishes his ability for self-care in prison or an age-related serious deterioration in his health, he must still show Congress's sentencing factors weigh in favor of early release. He fails to do so.

Congress in section 3553(a) requires us to consider, among other things, the nature and circumstances of Mr. Martines's offenses and his history and characteristics; the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and the need for the sentence imposed including to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.[74] We considered the section 3553(a) factors when we addressed Mr. Martines's first motion for compassionate release and found they weighed against his release.[75]

Mr. Martines today argues our consideration of the section 3553(a) factors require us to consider (1) his action in saving the life of a prison guard in 2014; (2) his minimal risk of recidivism as assessed by the Bureau of Prisons's under its Prisoner Assessment Tool and Targeting Estimated Risk and Needs ("PATTERN"); (3) his Summary Reentry Plan – Progress Report confirming his completion of over 1,700 hours of educational programming and positive comments from prison personnel; and (4) character references from his family and friends.[76] He also disputes our findings regarding the nature and circumstances of his offenses in our denial of his first motion for compassionate release. He argues we "exaggerated" our "characterizations of his crimes."[77] He denies ever being an "underboss" and ever being a "made man." He attributes these "falsehoods" to the testimony of John Veasey whom he claims "gave false testimony against him [Mr. Martines] in revenge for what he [Mr. Veasey] believed was [Mr.] Martines's involvement in [Mr. Veasey's] brother's murder."[78] Mr. Martines challenges other evidence presented at trial and argues Mr. Veasey "has been a free man since 2003," creating sentence disparities we must consider under section 3553(a).

Mr. Martines's argument does not change our view concerning the seriousness of the offense and an early release would not support respect for the law.

**1. Saving the life of a prison guard eight years ago does not warrant release.**

A prison guard at FCI Allenwood slipped and fell into a trash compactor in January 2014.[79] Mr. Martines, working with the prison guard at the time, pulled the guard out of the compactor.[80] Mr. Martines argues other inmates subjected him to threats and recriminations for saving the prison guard. He contends his action shows he is not a danger to the community. The United States argues this alone is not a basis for compassionate release.

We agree with the United States. We commend Mr. Martines on his courage and humanity. We hope all of us would do the same for a co-worker. We do not alter a sentence because other incarcerated persons lack the humanity. We cannot reduce Mr. Martines's sentence just because he is above the worst baseline of human empathy his fellow prisoners allegedly showed.

**2. The PATTERN assessment offers internal guidance but is not controlling.**

Mr. Martines offers an April 28, 2021 Bureau of Prison PATTERN risk assessment indicating "minimum" in overall risk and violent risk level.[81]

The First Step Act requires the Attorney General to, among other responsibilities, "conduct a review of the existing prisoner risk and needs assessment system in operation"; "develop recommendations regarding evidence-based recidivism reduction programs and productive activities"; "conduct ongoing research and data analysis on" evidence-based recidivism reduction programs; and "on an annual basis, review, validate, and release publicly on the Department of Justice website the risk and needs assessment system, which shall include -- … an evaluation to ensure that the risk and needs assessment system bases the assessment of each prisoner's risk of recidivism on indicators of progress and of regression that are dynamic and that can reasonably be expected to change while in prison" and other benchmarks of risk and needs assessment and recidivism rates.[82] To that end, on July 19, 2019, Attorney General Barr announced a "new Risk and Needs Assessment System called the Prisoner Assessment Tool and Targeting Estimated Risk and Needs, or simply 'PATTERN.'"[83]

According to the Department of Justice's National Institute of Justice, PATTERN "is designed to predict the likelihood of general and violent recidivism for all [Bureau of Prison] inmates three years post release. PATTERN contains both static (*e.g.*, criminal history) and

dynamic (*e.g.*, participation in education or drug treatment) factors that are associated with one's risk of recidivism. The PATTERN assessment tool provides predictive scores, developed and validated for males and females separately."[84]

The PATTERN tool considers fifteen variables: "age at assessment"; "infraction convictions (any) current incarceration"; "infraction convictions (serious and violent) current incarceration"; "infraction-free (any)"; "infraction-free (serious and violent)"; "program completions"; "work programming"; "drug treatment while incarcerated"; "noncompliance with financial responsibility"; "instant offense violent"; "sex offender"; "criminal history score"; "history of violence"; "history of escapes"; and "education score".[85] Each variable item receives a score or "yes/no" where applicable.[86] A "General Male" score between -23 to 8 and a "Violent Male" score between -11 to 6 are considered a minimum risk level.[87] Mr. Martines's PATTERN score is assessed at -15 for "General Male" and -3 for "Violent Male."[88]

At the outset of the COVID-19 pandemic, the Bureau of Prisons began using PATTERN, among other factors, to determine whether at-risk inmates who are non-violent and posed minimal likelihood of recidivism should serve the balance of their sentences on home confinement.[89] These decisions are left to the Bureau of Prisons which can decide to allow home confinement in light of the COVID-19 risk in our correctional facilities.

Several judges have reviewed PATTERN in the compassionate release context. Some judges find the tool may have some effect on our section 3553 analysis but others find a low PATTERN score does not override Congress's sentencing factors including the seriousness of the offense. For example, Judge Leeson denied a motion for compassionate release finding the petitioner did not show an extraordinary and compelling reason to warrant a reduction in sentence and petitioner, convicted of drug crimes, remained a danger to the community notwithstanding a

PATTERN score of "low."[90] Judge Hornak granted a motion for compassionate release finding petitioner's medical conditions constitute extraordinary and compelling reasons for release and, after considering the section 3553(a) sentencing factors and danger to community, finding petitioner is not a danger to the community considering his non-violent crime, good conduct in prison, and PATTERN score of "low." We recently reviewed a similar argument raised by Mr. Martines's co-defendant Salvatore Brunetti.[91] We denied his request for compassionate release as well.

As we recognized a couple weeks ago in reviewing Mr. Brunetti's argument, the PATTERN evaluation offers promising benchmarks for use by professionals in rehabilitation disciplines. But these internal evaluations do not alter our view as to the seriousness of his offenses found by the jury and the need to promote respect for the law. A jury convicted Mr. Martines for his conduct relating to two murders, seven attempted murders, conspiracy to commit murder, conspiracy to extort "street tax" and protection money from legitimate businesses, extortion of several individuals and businesses including a New Jersey police detective, and the operation of an illegal gambling business.[92] Mr. Martines received a life sentence for these violent offenses promoting respect for the law and detering further organized crime conduct. We commend his PATTERN score but we are not aware of any authority suggesting this assessment controls our analysis. While the PATTERN score assists us in appreciating the lower risk to society in release, we are not persuaded the low score erases the violent conduct leading to the sentence or discounts the seriousness of his criminal racketeering conduct.

**3. We credit but are not persuaded by the Summary Reentry Plan-Progress Report and the letters from family and friends.**

Mr. Martines provides us with a November 25, 2021 Summary Reentry Plan – Progress Report.[93] The Progress Report notes: Mr. Martines has taken over 1,700 hours of programming

over the time of his incarceration; he began a correctional facility job beginning in March 2011; he has two disciplinary infractions for possession of drugs or drug items in August 1994 and fighting in August 2018, but has not had any infractions since August 2018; and comments by prison personnel in 2007, 2008, 2016, 2019, 2020, and 2021 providing positive comments on Mr. Martines's good behavior and exemplary work and educational efforts.[94]

Mr. Martines also provides over fifteen letters from family and friends, some dated in 2020 which we considered in denying Mr. Martines's first motion for compassionate release. We accept the letters from family and friends regarding Mr. Martines's return to society. They offer thoughtful views of Mr. Martines without considering the nature of his offense and need to promote respect for the law.

Behaving and rehabilitating while incarcerated is expected. We are mindful he led a crime-free affirmative life and then decided as a mature father to take a significant role in Mr. Stanfa's murderous Enterprise. We thank those who speak on his behalf for their recognition of the value of rehabilitation.[95] We appreciate so many think Mr. Martines will not pose a risk to our society upon return. But the Progress Report and the letters do not override federal sentencing policy. We are not able to grant parole (as referenced by Pastor Martorano, O.S.A.) similar to the relief in the state court criminal justice system.[96] We carefully set our sentences for a number of months based on extensive pre-sentence investigations. Our elected representatives in Congress set the standard of extraordinary and compelling reasons along with the sentencing factors necessary to alter a final sentencing. Mr. Martines does not meet this standard today.

**4. We are not persuaded by Mr. Martines's challenge to our characterization of his crimes and his sentence compared to John Veasey.**

Mr. Martines also argues we overstated his criminal conduct in our denial of compassionate release last year after our review of the sentencing record before Judge Buckwalter in 1996. He

also argues Judge Buckwalter's sentence is unfair compared to the sentence given to John Veasey. We appreciate Mr. Martines may disagree with the findings especially reliance on testimony he believes is motivated by revenge. But today is not the time to dispute the record. Mr. Martines's counsel had ample opportunity to make these arguments before sentencing. Judge Buckwalter entered a life sentence based on the trial evidence and record adduced at the sentencing hearing. No court has vacated the sentence on legal grounds. We cannot discount Judge Buckwalter's findings to allow compassionate release today based on Mr. Martines's continuing dispute with the evidence leading to the jury's conviction.

**5. We cannot grant compassionate release under section 3553.**

We credit Mr. Martines's efforts to rehabilitate himself while incarcerated, the PATTERN assessment, Summary Reentry Plan Progress Report, and letters from family and friends. But we cannot justify release under the factors set by Congress. Mr. Martines is a convicted murderer, among other offenses, and a key member of an organized crime ring. Judge Buckwalter sentenced him to life imprisonment for his offenses. Mr. Martines served twenty-eight years of his sentence. He participated in the Enterprise's crimes and, in addition to two murders, his charged conduct includes seven attempted murders, conspiracy to commit murder, conspiracy to extort "street tax" and protection money from legitimate businesses, extortion of several individuals and businesses including a New Jersey police detective, and the operation of an illegal gambling business. A release from prison would not reflect the seriousness of Mr. Martines's offenses, promote respect for the law, or provide just punishment for his criminal conduct or afford adequate deterrence to this type of criminal conduct. Our elected representatives decided multiple murders and racketeering conduct warrants a life sentence. Judge Buckwalter sentenced him accordingly. Mr.

Martines's rehabilitation and good character while incarcerated are commendable but do not outweigh the remaining factors set by Congress.

## III.   Conclusion

We deny Frank Martines's second motion for compassionate release. He does not meet the standards set by Congress. He has not shown compelling and extraordinary reasons for release. Our balancing of Congress's factors weighs against release at this stage. We commend Mr. Martines's continued improvement in mind and body. But attention must also be paid to the sentence imposed by Judge Buckwalter.  We have no present grounds to alter Judge Buckwalter's considered analysis of the sentence.

---

[1] Presentence Investigation Report ("PSR") ¶¶ 9-10, 330, 335.

[2] *Id.* ¶ 10.

[3] *Id.*

[4] *Id.* ¶¶ 22-23.

[5] *Id.* ¶¶ 23, 27, 49-50, 75, 105-106.

[6] ECF Doc. No. 807.

[7] *Id.*; PSR ¶¶ 21-231.

[8] ECF Doc. No. 2001.

[9] ECF Doc. No. 2005 at 14–15 (using the pagination assigned by the CM/ECF docketing system).

[10] ECF Doc. No. 2001 at 13–14; ECF Doc. No. 2005 at 23-34.

[11] ECF Doc. No. 2005 at 7–8, 10, 12, 17.

[12] *Id.*  at 41-50, 52-56.

[13] *Id.* at 39.

[14] ECF Doc. No. 2012.

[15] ECF Doc. No. 2026-1 at 248; *see also* 154, 175, 194 (using the pagination assigned by the CM/ECF docketing system).

[16] ECF Doc. No. 2024-4 at 2–6 (using the pagination assigned by the CM/ECF docketing system).

[17] *Id.*

[18] *Id.* at 2.

[19] *Id.*

[20] ECF Doc. No. 2024-4 at 5. A myelogram is a "radiographic contrast study of the spinal subarachnoid space and its contents." Stedman's Medical Dictionary (28th ed. 2006).

[21] *Id.* "Spondylolisthesis" is defined as "forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or on the sacrum." Stedman's Medical Dictionary (28th ed. 2006).

[22] ECF Doc. No. 2024-4 at 5.

[23] *Id.*

[24] *Id.* "Radiculopathy" is defined as a "disorder of the spinal nerve roots." Stedman's Medical Dictionary (28th ed. 2006).

[25] *Id.* "Myelomalacia" is defined as "softening of the spinal cord." Stedman's Medical Dictionary (28th ed. 2006).

[26] *Id.* "Kyphosis" is defined as "an anteriorly concave curvature of the vertebral column; …" Stedman's Medical Dictionary (28th ed. 2006).

[27] ECF Doc. No. 2026-1 at 460–84.

[28] *Id.* at 165.

[29] *Id.* at 156.

[30] *Id.* at 455.

[31] *Id.* at 156.

[32] *Id.* at 457.

[33] *Id.*

[34] ECF Doc. No. 2024-1 at 2; ECF Doc. No. 2024-4 at 2.

[35] ECF Doc. No. 2024-1 at 3.

[36] *Id.* at 2–3.

[37] *Id.* at 2. A January 31, 2022 Bureau of Prisons clinical encounter notes Mr. Martines had a follow up visit with an ear, nose, and throat specialist on January 27, 2022. ECF Doc. No. 2026-1 at 157. A nurse practitioner noted Mr. Martines's history of dysphagia and "growth on throat." *Id.* "Dysphasia" is defined as an "impairment in the production of speech and failure to arrange words in an understandable way; …" Stedman's Medical Dictionary (28th ed. 2006). The exam, eight days post-operative cervical spine surgery, noted Mr. Martines's report of increased dysphagia. *Id.* The nurse practitioner recommended Ensure supplements, liquid to soft diet, and dietary evaluation. *Id.* Mr. Martines does not contend his dysphagia and growth on throat contribute to the extraordinary and compelling reasons for release.

[38] ECF Doc. No. 2024-1 at 2. The Bureau of Prisons's record of devices and medical equipment shows it prescribed Mr. Martines a 4-wheel walker on December 10, 2021 for a three-month period. *See* ECF Doc. No. 2026-1 at 376.

[39] ECF Doc. No. 2024-1 at 5.

[40] ECF Doc. No. 2024-11 at 2.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] ECF Doc. No. 2024-5 at 2.

[45] ECF Doc. No. 2024-6 at 2.

[46] ECF Doc. No. 2024-7 at 2–8.

[47] ECF Doc. No. 2024-8 at 2–24.

[48] Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines outlines circumstances constituting "extraordinary and compelling reasons" under which district courts may reduce a term of imprisonment:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of

life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serios deterioration in physical or mental health because of the aging process; and (3) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the [Bureau of Prisons], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13, Application Note 1(A)-(D). Mr. Martines does not claim extraordinary and compelling reasons under either the Family Circumstances or Other Reasons descriptions.

[49] 18 U.S.C. § 3582.

[50] 12 F.4th 255 (3d Cir. 2021).

[51] *Id.* at 259–60.

[52] *Id.* at 260.

[53] U.S.S.G. § 1B1.13, Medical Condition Note.

---

[54] *Id.*, Age Note.

[55] ECF Doc. No. 2026 at 2–3.

[56] *Id.*

[57] ECF Doc. No. 2026-1 at 455–57.

[58] *Id.* at 171.

[59] *Id.* at 165.

[60] *Id.* at 376.

[61] *See* ECF Doc. No. 2026-1 at 404 (noting 4-wheel walker as of 12/22/2021) and ECF Doc. No. 2026-1 at 403 (noting 4-wheel walker as of 2/11/2022). *See also* ECF Doc. No. 2033, amended Reply Brief at 1.

[62] ECF Doc. No. 2033-1 at 2 (using the pagination assigned by the CM/ECF docketing system). Although the use of the walker is for a three-month period ending March 10, 2022, Mr. Martines contends authorization for the walker "will almost certainly be extended because he is suffering impaired use of his legs." ECF Doc. No. 2033 at 1.

[63] ECF Doc. No. 2026 at 4–5.

[64] ECF Doc. No. 2033 at 1-2; ECF Doc. No. 2033-1 at 2.

[65] *See* ECF Doc. No. 2024-7 at 6.

[66] ECF Doc. No. 2026 at 4.

[67] ECF Doc. No. 2030 at 3. In his reply brief, Mr. Martines concedes he is able to wash, bathe, ambulate, and dress himself and conceded he is not using a walker. *Id.* He amended his reply to correct his counsel's mistaken representation he does not use a walker. *See* ECF Doc. No. 2033. As detailed, the Bureau of Prisons's records show the prescription of a 4-wheel walker. Mr. Martines's amended reply does not dispute his ability to wash, bathe, ambulate, and dress himself even with the use of a "rolling seat walker to navigate the compound." *Id.* at 1.

[68] ECF Doc. No. 2033-1 at 2.

[69] *Id.* at 3.

[70] *Id.*

[71] *See United States v. Gordon Reid*, No. 05-57-1, 2022 WL 772868, at *1 (D.N.H. Mar. 14, 2022) (finding defendant did not meet his showing of extraordinary and compelling reasons warrant sentence reduction where "[s]pinal stenosis, though painful and sometimes debilitating, is a common condition, particularly among older people, and one that is amendable to treatment by the Bureau of Prisons in the same general manner as it would be treated outside of prison."); *United States v. Cooper*, No. 15-16, 2020 WL 6867174, at *2 (N.D. Ind. Nov. 23, 2020) (finding no extraordinary and compelling reasons warrant sentence reduction where medical records supported claim of spinal stenosis managed by the Bureau of Prisons through the provisions of reasonable accommodations to his living conditions in prison and pain medication).

[72] ECF Doc. No. 2024-1 at 5.

[73] *Id.*

[74] Section 3553(a) provides in relevant part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . .
>
> (5) any pertinent policy statement – (A) issued by the Sentencing Commission …; and (B) that … is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]
>
> . . .

18 U.S.C. § 3553(a).

[75] *See* ECF Doc. No. 2012.

[76] ECF Doc. No. 2024-1 at 5–8.

[77] *Id.* at 9–10.

[78] *Id.* at 10.

[79] ECF Doc. No. 2024-5 at 2.

---

[80] *Id.*

[81] ECF Doc. No. 2024-6 at 2.

[82] 18 U.S.C. § 3631(b)(1)–(4).

[83] *The First Step Act of 2018: Risk and Needs Assessment System*, U.S. Department of Justice, Office of Attorney General. *See The First Step Act of 2018: Risk and Needs Assessment System*, U.S. Dep't of Justice, *available at* https://nij.ojp.gov/first-step-act/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf (last visited Mar. 18, 2022).

[84] *2020 Review and Revalidation of the First Step Act Risk Assessment Tool*, U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, January 2021, at 2, available at https://www.ojp.gov/pdffiles1/nij/256084.pdf (last visited Mar. 18, 2022).

[85] *Id.* at 12–13.

[86] *Id.* at 14–15.

[87] *Id.* at 16.

[88] ECF Doc. No. 2024-6 at 2.

[89] Mar. 26, 2020 Memorandum from Attorney General William Barr to Director of Bureau Prisons, available at https://www.justice.gov/file/1262731/download (last visited Mar. 18, 2022).

[90] *United States v. Abreu*, No. 16-233, 2021 WL 1884788, at *6-7 (E.D. Pa. May 11, 2021). *See also United States v. Straite*, No. 11-321-1, 2022 WL 446048 (M.D.N.C. Feb. 14, 2022) (third motion for reduced sentence denied with no showing of extraordinary and compelling reasons and rejecting petitioner's argument his good behavior, education and vocational courses and programs in prison, and rejecting petitioner's argument PATTERN score of "low" shows he is no longer a danger to community); *United States v. Burman*, No. 16-190, 2021 WL 681401 (S.D.N.Y. Feb. 21, 2021) (second motion for compassionate release denied finding petitioner did not show medical conditions constitute extraordinary and compelling reasons and rejecting petitioner's argument his PATTERN score of "minimum" and other educational and rehabilitation classes in prison show he is not a danger to the community); *United States v. Krueger*, No. 09-103, 2021 WL 535479 (E.D. Wisc. Feb. 12, 2021) (motion for compassionate release denied where United States conceded petitioner may be able to establish extraordinary and compelling medical releases for sentence modification but court found danger to the public despite PATTERN risk assessment of "minimum").

[91] *United States v. Brunetti*, No. 94-127-13, 2022 WL 685535 (E.D. Pa. Mar. 8, 2022).

[92] PSR ¶¶ 21–75; 100–111; 128–134; 141–192; 221–231.

[93] ECF Doc. No. 2024-7 at 2–8.

[94] *Id.* at 6–7.

[95] In *United States v. Rodriguez*, 451 F.Supp.3d 392 (E.D. Pa. 2020), Judge Brody granted a motion for compassionate release finding extraordinary and compelling reasons for a reduction in sentence. Judge Brody found the defendant's service of seventeen years of a twenty-year mandatory-minimum sentence for drug distribution and unlawful firearm possession, one year away from home confinement, health conditions (diabetes, high blood pressure, liver abnormalities) during the height of the COVID-19 pandemic, and significant rehabilitation while in prison taken together warranted a reduction in sentence. The United States objected to the motion for compassionate release, in part because rehabilitation is not grounds for compassionate release. Judge Brody recognized "Congress's directive to the Sentencing Commission that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason'" for compassionate release under 28 U.S.C. § 994(t). Judge Brody agreed rehabilitation alone does not constitute an extraordinary and compelling reason warranting compassionate release but can "contribute to extraordinary and compelling reasons." *Id.* at 405 (citing U.S.S.G. § 1B1.13 cmt. n.3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, *by itself*, an extraordinary and compelling reason for purposes of this policy statement." (emphasis added) (additional citation omitted). Judge Brody found all factors – the COVID-19 pandemic, the petitioner's health problems, proximity to release date, and rehabilitation – taken together warranted relief. We do not have these constellation of factors. Mr. Martines is vaccinated for COVID-19 and does not argue his heightened risk from complications from COVID-19; he is serving a life sentence for his crimes; and we have conflicting medical information on his current condition with regard to self-care in prison. He appears to have made significant strides in rehabilitation efforts. But that alone cannot serve as a basis for granting his motion for compassionate release.

[96] ECF Doc. No. 2024-8 at 7 (using the pagination assigned by the CM/ECF docketing system).