**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 94-127-3** |
| | : | |
| **FRANK MARTINES** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **April 3, 2024**

     Young father Frank Martines, Jr. left a career to join La Casa Nostra and later direct the murders of others in a large criminal enterprise where he eventually rose to become the underboss to John Stanfa. Our grand jury charged him with directing and participating in several murders. The jury later found him guilty of taking the lives of many persons. Judge Buckwalter imposed a life sentence based on the offense level as affirmed by our Court of Appeals in the late 1990s.

     He decided to first seek early release from his life sentence in early 2021.  He earlier cited his deteriorating medical condition during COVID-19 given his advancing age.  We denied those arguments. He now asks for compassionate release for the third time in the last forty months.  We may expect a person with a considered life sentence to face tougher medical conditions as they age.  The Bureau of Prisons can and has treated his medical condition.  The United States does not dispute his worsened medical condition today creates an extraordinary and compelling reason for release.  We continue to commend him for his work in the Facility and appreciate the kind words offered in support of release.  But we can only release today if we could find he does not present a danger to community including a safe plan for return to the community.  We cannot do so today. Mr. Martines continues to dispute the merits of the jury's findings of his murderous conduct.  He offers little remorse. We would want to ensure the families of the deceased know of his requested release. We find no more reason to believe he can be safely released to our community than he

offered the last two times. And it may be worse as he plans to live with his son who is also a federal and state felon and now charged with violent domestic crimes in Philadelphia facing trial later this month.

There is a definite place for release in our justice. But a considered life sentence means persons may become ill while incarcerated. We hope our incarcerated persons productively work towards rehabilitation. But we would expect some remorse and a plan to safely enter the community if release is otherwise warranted. We find no basis to alter a well-considered life sentence for the underboss of a murderous organized crime enterprise found by a jury to have taken the lives of many others.

## I. The public record of Mr. Martines's conviction and challenges to conviction.

Frank Martines grew up in Philadelphia.[1] He graduated high school in 1971 and started working in AMTRAK's maintenance department in 1976.[2] Mr. Martines married in 1975 and raised a son, Frank Martines, III.[3] Mr. Martines worked for AMTRAK until 1986 when he began collecting disability after sustaining an injury on the job.[4] Mr. Martines started his own construction business in 1989 and worked as a salesman for a waste management company during the same time.[5]

Mr. Martines sustained a gunshot wound to his leg in 1983.[6] The circumstances surrounding Mr. Martines's gunshot wound are unclear. Mr. Martines had no criminal convictions before associating himself with Philadelphia's La Cosa Nostra Enterprise led by John Stanfa in 1990.[7]

### *Mr. Martines's underboss role in Philadelphia's La Cosa Nostra.*

Philadelphia's La Cosa Nostra Enterprise acted at the direction of a "boss."[8] The Enterprise's boss acted through an "underboss."[9] The Enterprise's boss and underboss gave orders

to "caporegimes" and "soldiers."[10] The Enterprise's soldiers carried out the boss and underboss's orders while also directing "associates" to complete work for the soldiers.[11]

The Enterprise's members murdered, attempted to murder, and conspired to murder other members and associates who violated the Enterprise's rules.[12] The Enterprise used murder and intimidation against those who questioned its authority, threatened the Enterprise's leaders, jeopardized the Enterprise's operations, or hampered the Enterprise's cash flow.[13]

Anthony Piccolo acted as the Enterprise's boss until John Stanfa succeeded him in 1991.[14] Joseph Ciancaglini, Jr. served as the Enterprise's underboss until March 2, 1993.[15] Mr. Martines succeeded Mr. Ciancaglini, Jr. as the acting underboss after March 2, 1993.[16] Mr. Stanfa confirmed Mr. Martines served as the Enterprise's acting underboss.[17] A caporegime also confirmed he and Mr. Martines "are in charge" of the Enterprise if Mr. Stanfa goes to jail.[18]

Mr. Martines recruited and directed others to recruit Enterprise associates to kill rival gang members.[19] Mr. Martines assigned associates tasks in the murder plot like acquiring guns, bombs, and cyanide.[20] Mr. Martines and other Enterprise associates used a garage in Philadelphia to house the instruments of the murder conspiracy.[21] Mr. Martines assured one member of the murder conspiracy he could trust another soldier because Mr. Martines knew the soldier had killed before.[22]

### Mr. Martines orchestrates a rival gang leader's murder.

Mr. Martines introduced one Enterprise associate to Mr. Stanfa explaining the associate's role and assignment to a hit crew.[23] Mr. Stanfa approved the hit crew and their objective to kill a rival gang leader.[24] The hit crew carried firearms, a high-powered rifle with a scope, and homemade bombs they intended to place under the rival gang leader's car.[25]

3

The hit crew planned to shoot the rival gang leader with the high-powered rifle from the roadside of I-95 but failed.[26] The hit crew stalked the rival gang leader the following evening to a funeral home but abandoned the attempt because there were too many witnesses near the funeral home.[27]

The hit crew injured the rival gang leader and killed the rival gang's second-in-command several days later in a drive-by shooting.[28] A hit crew member injured his hand while burning the car used in the killing.[29] Mr. Martines paid the injured hit crew member $300, instructed the injured member to "lay low," and relayed Mr. Stanfa's appreciation to the hit crew member for the second-in-command's murder.[30]

The injured hit crew member visited the hospital after the Enterprise failed to send him a doctor.[31] Mr. Martines relayed Mr. Stanfa's "unhapp[iness]" to the injured hit crew member for visiting the hospital.[32] The hit crew members poured acid on the firearms and disposed of them in a body of water.[33]

### *Mr. Martines orchestrates a second murder.*

Several Enterprise associates met Mr. Martines at an associate's house.[34] Mr. Martines brought the component parts for a homemade pipe bomb and left with an associate to deliver the parts to the Enterprise's bombmaker.[35] Mr. Martines later returned to the associate's home with six firearms.[36]

Mr. Martines ate dinner with the Enterprise associates and then drove them home.[37] Mr. Martines and the Enterprise associates noticed a member of the rival gang member's car parked at a diner.[38] The Enterprise associates circled the diner several times to confirm the rival gang member's presence in the diner.[39] Mr. Martines instructed the passengers to kill the rival gang member.[40]

Mr. Martines drove the Enterprise associates to pick up firearms.[41] Mr. Martines determined he and another associate would act as the shooters.[42] One Enterprise associate offered to shoot the rival gang member in Mr. Martines's stead to prove himself to Mr. Martines.[43] The two Enterprise associates shot and killed the rival gang member.[44] Mr. Martines drove off with the Enterprise associates.[45]

### Mr. Martines orchestrates a failed murder attempt.

Messrs. Martines and Stanfa directed five Enterprise associates to form a hit crew and kill a rival gang member.[46] Messrs. Martines and Stanfa sent the hit crew in two cars armed with firearms to find the rival gang member.[47] The hit crew abandoned the attempt after seeing police in the area.[48]

### Mr. Martines orchestrates a second failed murder attempt.

Messrs. Martines and Stanfa directed four Enterprise associates to form a hit crew and kill a rival gang member.[49] Messrs. Martines and Stanfa directed the hit crew to carry firearms and shoot the rival gang member as the rival gang member left his house in the morning.[50] The hit crew stole and hid inside of a van until the rival gang member left his home.[51] The hit crew abandoned the attempt because there were many pedestrians nearby when the rival gang member left his home.[52] The hit crew tried again the next day but abandoned the attempt after two hit crew members did not arrive.[53]

### Mr. Martines orchestrates a third failed murder attempt.

Mr. Martines assembled seven Enterprise associates to form a hit crew and kill a rival gang member.[54] Mr. Martines helped the hit crew plan the murder.[55] Mr. Martines directed the hit crew to wait outside a bar the targeted rival gang member frequented.[56] The hit crew abandoned the attempt because the rival gang member failed to arrive at the bar.[57]

### *Mr. Martines orchestrates a fourth failed murder attempt.*

Mr. Martines assembled five Enterprise associates to form a hit crew and kill a rival gang member.[58] The hit crew met at a diner to discuss killing the rival gang member in a drive-by shooting.[59] The hit crew took up positions outside of the rival gang member's home.[60] One hit crew member saw and followed the rival gang member's car but lost the rival gang member in traffic.[61] The hit crew abandoned the attempt after losing the rival gang member's car in traffic.[62]

### *Mr. Martines conspires to murder two rival gang members.*

Messrs. Martines and Stanfa conspired to kill two Enterprise associates believing the associates cheated the Enterprise out of money.[63] Mr. Stanfa arranged to meet the two Enterprise associates at a restaurant in New Jersey.[64] Mr. Stanfa did not intend to attend the meeting and instead set up the meeting as a trap for Mr. Martines and others to murder the two Enterprise associates.[65] Mr. Martines and two other Enterprise associates met outside the New Jersey restaurant.[66] Mr. Martines provided an Enterprise associate a firearm equipped with a silencer.[67] Mr. Martines and the two other Enterprise associates stalked the two Enterprise associates.[68] The conspirators abandoned the murder attempt.[69]

### *Mr. Martines attempts to murder an Enterprise associate cooperating with law enforcement.*

An Enterprise associate began cooperating with the Federal Bureau of Investigation during the Enterprise's war with the rival gang.[70] Mr. Martines and an Enterprise associate took the cooperating witness to a bar.[71] Mr. Martines and the associate took the cooperating witness to an apartment after leaving the bar.[72]

Mr. Martines excused himself to the bathroom while in the apartment.[73] The Enterprise associate had the cooperating witness sit with his back to the bathroom while instructing the cooperating witness on taking book.[74] Mr. Martines exited the bathroom armed with a firearm and

began shooting at the cooperating witness.[75] Mr. Martines shot the cooperating witness three times in the head.[76] One bullet grazed the cooperating witness's head, the second struck the cooperating witness's head and exited the back of the cooperating witness's head, and the third bullet struck the cooperating witness's head but did not penetrate his skull.[77]

The cooperating witness survived the three bullets to his head and turned to face Mr. Martines.[78] Mr. Martines shot the cooperating witness in the chest.[79] The undaunted cooperating witness grabbed Mr. Martines's firearm and emptied its magazine.[80] Mr. Martines and the Enterprise associate grabbed the cooperating witness and beat the cooperating witness's head with the firearm.[81] Mr. Martines pulled out a knife and instructed the Enterprise associate to hold the cooperating witness's head back so Mr. Martines could slash the cooperating witness's throat.[82] The cooperating witness disarmed Mr. Martines.[83] Mr. Martines explained to the cooperating witness he did not mean to hurt the cooperating witness.[84] The cooperating witness fled the apartment.[85]

### *Mr. Martines's trial, conviction, and sentence.*

Our Grand Jury charged Mr. Martines and seventeen others with engaging in organized crime in violation of the Racketeer Influenced and Corrupt Organizations Act.[86] Our Grand Jury specifically charged Mr. Martines with two counts of racketeering including two racketeering acts of murder, seven racketeering acts of attempted murder, two racketeering acts of conspiracy to commit murder, eight racketeering acts of extortion including extortion of a New Jersey state trooper, one racketeering act of conspiracy to extort street tax and protection money, four racketeering acts of violent crime in aid of racketeering activity, one racketeering act of Hobbs Act extortion, and two racketeering acts of operating an illegal gambling business.[87] Our Grand Jury also charged Mr. Martines with four counts of violent crime in aid of racketeering activity,

one count of Hobbs Act extortion, and one count of illegal gambling business.[88] A jury convicted Mr. Martines on all counts.

The probation officer calculated an offense level of forty-nine and a criminal history score of zero for Mr. Martines.[89] Mr. Martines argued Judge Buckwalter should apply a two-point downward adjustment for acceptance of responsibility as demonstrated by Mr. Martines's attempts to negotiate a plea deal for a sentence up to thirty years.[90] Judge Buckwalter denied the acceptance of responsibility adjustment.[91] Judge Buckwalter observed Mr. Martines has never accepted any form of culpability even after trial while continuing to maintain he did not engage in the conduct found by the jury.[92] Judge Buckwalter sentenced Mr. Martines to life imprisonment, three twenty-year terms of imprisonment concurrent with the life sentence, one five-year term of imprisonment concurrent with the life sentence, and five years' supervised release.[93] Judge Buckwalter explained the Sentencing Guidelines' then-mandatory provision for life imprisonment but noted Mr. Martines committed "very serious" crimes.[94]

Mr. Martines began serving his life sentence on July 10, 1996.[95] Mr. Martines appealed Judge Buckwalter's sentence.[96] Our Court of Appeals affirmed Judge Buckwalter's sentence in 1998.[97] Mr. Martines petitioned the Supreme Court for certiorari. The Supreme Court denied certiorari in 1999.[98]

### Mr. Martines's first compassionate release motion.

Seventy-year-old Mr. Martines first moved for compassionate release in January 2021.[99] Mr. Martines argued his advanced age and pre-existing medical conditions put him at risk for complications arising from a COVID-19 infection constituting an extraordinary and compelling reason warranting his release.[100] Mr. Martines argued Congress's section 3553(a) factors weighed in favor of compassionate release because he completed extensive education courses, completed a

nine-month residential treatment program to facilitate institutional adjustment, received "only" two infractions one of which for fist-fighting a fellow inmate, and prison employees attested to his good behavior during work assignments.[101] Mr. Martines argued these activities demonstrated he no longer posed a danger to the community.[102]

We denied Mr. Martines's first compassionate release motion without prejudice.[103] We found Mr. Martines's age and well-managed medical conditions did not present an extraordinary and compelling reason warranting his release.[104] We considered Mr. Martines's adduced completion of education courses and rehabilitation attempts while incarcerated but held the extremely violent nature of his crimes required us to find he presented a danger to the community.[105]

### Mr. Martines's second compassionate release motion.

Mr. Martines moved for compassionate release for the second time in February 2022.[106] Mr. Martines argued his degenerative back condition, including "severe disc degeneration," spinal stenosis, and then-recent neck surgery constituted an extraordinary and compelling reason warranting his release.[107] Mr. Martines argued his physician suggested Mr. Martines would increasingly need assistance with bathing, shaving, dressing, and other life functions.[108] Mr. Martines argued he did not present a danger to the community because (1) he saved a prison guard's life by pulling him out of a trash compactor, (2) the Bureau of Prisons Prisoner Assessment Tool and Targeting Estimated Risk and Needs ("PATTERN") considered him a minimal risk for recidivism, (3) his Summary Reentry Plan confirmed his completing 1,700 hours of prison programming, and (4) character letters confirmed his good nature.[109]

Mr. Martines also demonstrated little remorse. He argued we "exaggerated" his crimes in our February 8, 2021 Memorandum Opinion.[110] Mr. Martines denied serving as the Enterprise's

underboss and denied being an inducted member in the Enterprise.[111] Mr. Martines argued the evidence implicating Mr. Martines as the Enterprise's underboss came from the cooperating witness he tried to murder "who gave false testimony against [Mr. Martines] in revenge for what he believed was Martines' involvement in [the cooperating witness's] brother's murder."[112]  He continued to argue the evidence without showing the remorse we would expect during rehabilitation. We cannot and will not go back to evaluate witness credibility.

We denied Mr. Martines's second compassionate release motion without prejudice.[113] We carefully considered Mr. Martines's medical records.[114] We found Mr. Martines did not present extraordinary and compelling reasons warranting compassionate release because his physical condition did not meet the Medical Condition or Age Note as Mr. Martines admitted he can provide self-care.[115] We found Mr. Martines remained a danger to the community.[116] We commended Mr. Martines for saving the prison guard's life but denied altering his sentence because other inmates failed to save the prison guard's life.[117] We credited Mr. Martines's PATTERN test score but held the Bureau of Prisons' internal evaluations do not alter our view as to the seriousness of Mr. Martines's offenses.[118] We credited Mr. Martines's educational program completion and character references.[119] But we found Mr. Martines's involvement in two murders, seven attempted murders, and conspiracies to murder two Enterprise associates constituted serious offenses preventing us from granting Mr. Martines compassionate release.[120] We reminded Mr. Martines he took advantage of the opportunity to challenge the evidence against him on direct appeal.[121]

## II.    Analysis

Mr. Martines now moves to reduce his sentence for a third time since January 2021.[122]  We begin with the necessary steps to analyze compassionate release motions under four laws set by Congress:

(1) Congress through section 3582(c)(1)(A) requires we find extraordinary and compelling reasons exist warranting compassionate release and consider its section 3553(a) factors before granting compassionate release;[123]

(2) Congress through section 3553(a) requires we consider, among other things, the nature and circumstances of the offense, the need to reflect the seriousness of the offense, the need to promote respect for the law, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from further crimes of the defendant.[124]

(3) Congress through section 3553(a)(5) requires we consider a pertinent policy statement the Sentencing Commission issues when reviewing the section 3553(a) factors;[125]

(4) the Sentencing Commission through section 994(a)(2)(C) may issue general policy statements concerning sentence modifications under section 3582(c);[126] and,

(5) the Sentencing Commission issued policy statement 1B1.13 requiring we find the incarcerated person is not a danger to the safety of another person or to the community before granting compassionate release.[127]

Mr. Martines largely focuses on his physical condition. Both parties agree his deteriorating physical condition is an extraordinary and compelling reason for early release. But Congress requires more. Mr. Martines argues the policy statement and section 3553(a) factors favor release. He compares his conduct to persons released. The United States argues we should not release Mr. Martines given the nature of his role as an underboss in the Enterprise. We deny Mr. Martines's motion as we cannot find release today satisfies the section 3553 factors and the Sentencing Commission's policy statement.

**A. Mr. Martines's deteriorating physical condition today creates an extraordinary and compelling reason for release if otherwise warranted.**

Mr. Martines argues his deteriorating physical condition constitutes an extraordinary and compelling reason warranting his release.[128] Mr. Martines tells us he has regressed from walking on his own, to using a walker, to using a wheelchair since our March 21, 2022 denial of compassionate release.[129] Mr. Martines's right hand is non-functional.[130] Mr. Martines has trouble swallowing food and experienced several choking incidents in the last year.[131] Mr. Martines's University of Pittsburgh Medical Center physician reported in December 2023 Mr. Martines can still perform activities of daily living but the hospital's neurosurgery department considered his case "too complicated" and referred him for a second opinion.[132]

We need not consider whether Mr. Martines presents extraordinary and compelling reasons because the United States concedes Mr. Martines's deteriorating physical condition constitutes an extraordinary and compelling reason warranting his release.[133] The issue today is whether he remains a danger to the community and his release is otherwise consistent with sentencing policies defined by Congress.

**B. Mr. Martines remains a danger to the community preventing us from granting him compassionate release.**

The United States argues Congress's section 3553(a) factors weigh against granting Mr. Martines compassionate release.[134] The United States reminds us we denied Mr. Martines compassionate release in our February 8, 2021 and March 21, 2022 Orders because he remained a danger to the community and Congress's section 3553(a) factors weighed against granting him compassionate release.[135]

Mr. Martines responds we should grant his compassionate release because he is a "model prisoner" and again cites to his PATTERN test score he submitted two years ago.[136] Mr. Martines

also we should be persuaded by our colleagues recent grants of compassionate release to organized crime members convicted of murder.[137] Mr. Martines argues he does not pose a danger to the community by citing cases where district judges granted convicted murderers compassionate release.[138] Mr. Martines does not provide us evidence of his rehabilitation we have not already considered.[139]

He also continues to argue the merits of his conviction. We hear little or no remorse. Mr. Martines argues Judge Buckwalter did not consider Congress's section 3553(a) factors when deciding his sentence because the Sentencing Guidelines were then-mandatory and are now non-binding.[140] We cannot decide this issue today.

Mr. Martines tells us, if we release him, he would live with his son, Frank Martines, III in Philadelphia.[141] Mr. Martines explains his son can help Mr. Martines perform activities of daily living and can drive Mr. Martines to doctor appointments.[142] Mr. Martines did not tell us the whole story. His son Frank Martines, III pleaded guilty to three counts of simple assault, one count of recklessly endangering another person, three counts of disorderly conduct, and one count of criminal mischief on January 23, 1996.[143] Mr. Martines, III pleaded guilty to one count of receiving stolen property, one count of possession of marijuana, and one count of carrying a firearm without a license on April 2, 1998.[144] The federal docket reports Mr. Martines, III pleaded guilty to one count of engaging in the business of dealing firearms without a license on June 7, 1999.[145] Judge Lifland sentenced Mr. Martines, III to seventeen months' imprisonment and three years' supervised release on his section 922(a)(1)(A) conviction.[146] Mr. Martines, III pleaded guilty to one count of possessing a small amount of marijuana for personal use on October 1, 1999.[147] Mr. Martines, III pleaded guilty to one count of aggravated assault on September 2, 2010.[148] Judge

Kane sentenced Mr. Martines, III to nine-to-twenty-three months' imprisonment and immediately paroled Mr. Martines, III to a substance abuse treatment facility.[149]

And the son's conduct raises more immediate concerns. Philadelphia police officer Jackson arrested Mr. Martines, III on March 20, 2024.[150] The Commonwealth charged Mr. Martines's son with one count of criminal mischief, one count of making terroristic threats with the intent to terrorize another, one count of simple assault, and one count of recklessly endangering another person.[151] The Commonwealth and Mr. Martines's son are set for trial for April 23, 2024.

We again return to the governing law. Congress requires we consider the section 3553(a) factors before granting an incarcerated person compassionate release.[152] Congress instructs we consider pertinent policy statements the Sentencing Commission issued as part of our section 3553(a) factor analysis.[153] The Sentencing Commission's policy statement concerning compassionate release motions requires we find the incarcerated person is "not a danger to the safety of any other person or to the community" before granting their compassionate release.[154]

We found two years ago Mr. Martines posed a danger to the community.[155] We commended Mr. Martines for saving a prison guard's life, achieving a low PATTERN score, completing educational programs, and receiving character references.[156] But we found the seriousness of Mr. Martines's offenses by orchestrating two murders, attempting seven murders, and conspiring to kill two Enterprise associates outweighed Mr. Martines's argued rehabilitation.[157]

Mr. Martines again argues he achieved a low recidivism score on his PATTERN test.[158] Mr. Martines argues Judge Buckwalter did not consider Congress's section 3553(a) factors when imposing his sentence because of the then-mandatory Sentencing Guidelines requiring Judge Buckwalter sentence Mr. Martines to life imprisonment.[159] Mr. Martines argues we should grant

him compassionate release because our colleagues recently released organized crime members convicted of murder.[160]

We are not revisiting appellate arguments and Mr. Martines's explanations for his convicted conduct. Mr. Martines's assertion Judge Buckwalter did not consider the section 3553(a) factors is not a ground for compassionate release.[161] Mr. Martines notes the Supreme Court's 2005 decision in *Booker* rendered the Sentencing Guidelines non-binding.[162] Mr. Martines raises this argument for the first time nineteen years after our Supreme Court decided *Booker*. We studied the sentencing transcript. There is no basis to find Judge Buckwalter did not consider Congress's section 3553(a) factors.[163] Whether Judge Buckwalter considered Congress's section 3553(a) factors when imposing Mr. Martines's life sentence has no bearing on our assessment of Mr. Martines's danger to the community.

We are aware of our colleagues releasing incarcerated organized crime members convicted of murder.[164] But we are presented with unique facts demonstrating the danger Mr. Martines poses to the community.[165] Mr. Martines served as the Philadelphia La Cosa Nostra Enterprise's second-in-command.[166] Mr. Martines recruited Enterprise associates to murder rival gang members.[167] Mr. Martines armed the Enterprise associates he ordered to kill rival gang members.[168] Mr. Martines operated as the intermediary between the Enterprise's boss and its hit crews.[169] Mr. Martines successfully ordered two murders.[170] Four of Mr. Martines's ordered murders failed only because of extenuating circumstances like the presence of law enforcement, witnesses, or the targeted gang member's failure to appear.[171] Mr. Martines plotted to murder two Enterprise associates and provided a firearm with a silencer to the would-be shooters.[172] Mr. Martines shot a cooperating witness three times in the head, one time in the chest, and tried to slash the cooperating witness's throat.[173] We recognize Mr. Martines's physical condition may prevent him from

committing violent attacks like the one on the cooperating witness. But the bulwark of Mr. Martines's charged violent conduct occurred at his order. We find Mr. Martines poses a danger to the community. And we would like to hear from the families of the victims as to their view on early release from a life sentence given Mr. Martines continues to dispute the facts for his conviction and has not shown remorse to us.

Congress's section 3553(a) factors similarly weigh against granting Mr. Martines compassionate release. Mr. Martines helped operate Philadelphia's La Cosa Nostra Enterprise as its second-in-command. Mr. Martines ordered six murders and attempted one himself. Mr. Martines extorted several individuals including a New Jersey police detective. Mr. Martines continues to explain away his role in the Enterprise and the severity of his crimes. These are serious crimes for which Mr. Martines does not currently demonstrate remorse. Congress then determined participation in murder and racketeering warrants a criminal offense level of forty-nine. The United States Sentencing Commission still recommends life imprisonment. We find Congress's section 3553(a) factors do not support granting Mr. Martines compassionate release.

Mr. Martines tells us he would live with his son if released.[174] We share concerns about this re-entry plan. Mr. Martines tells us his son will help Mr. Martines perform the activities of daily living and drive him to doctor appointments.[175] Frank Martines, III currently awaits trial for violent domestic crimes in Philadelphia.[176] Frank Martines, III has an extensive criminal record including pleading guilty to a federal firearms offense.[177] Releasing an incarcerated person responsible for plotting six murders and attempting a seventh to someone with an extensive criminal record does not serve the purposes of compassionate release.

## III.   Conclusion

We deny Mr. Martines compassionate release without prejudice.

[1] Presentence Investigation Report ¶ 332 (June 13, 1996).

[2] *Id.* ¶¶ 342, 346.

[3] *Id.* ¶¶ 334, 335.

[4] *Id.* ¶¶ 345, 346.

[5] *Id.* ¶¶ 343, 344.

[6] *Id.* ¶ 338.

[7] *Id.* ¶ 330. Mr. Martines admits his association occurred from 1990 to 1994. ECF No. 2001 at 12.

[8] Presentence Investigation Report ¶ 10 (June 13, 1996).

[9] *Id.*

[10] *Id.* ¶ 11.

[11] *Id.* ¶ 12.

[12] *Id.* ¶ 18.

[13] *Id.*

[14] *Id.* ¶ 10.

[15] *Id.*

[16] *Id.*

[17] *Id.* ¶ 16.

[18] *Id.* ¶ 17.

[19] *Id.* ¶ 23.

[20] *Id.*

[21] *Id.* ¶ 25.

[22] *Id.*

[23] *Id.* ¶ 27.

[24] *Id.* ¶ 29.

[25] *Id.* ¶ 57.

[26] *Id.* ¶ 58.

[27] *Id.*

[28] *Id.* ¶ 35.

[29] *Id.* ¶ 39.

[30] *Id.* ¶ 42.

[31] *Id.*

[32] *Id.* ¶ 43.

[33] *Id.* ¶ 45.

[34] *Id.* ¶¶ 47, 48.

[35] *Id.* ¶ 49.

[36] *Id.* ¶ 50.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* ¶ 51.

[42] *Id.*

[43] *Id.* ¶ 52

[44] *Id.*

[45] *Id.*

[46] *Id.* ¶ 61.

[47] *Id.* ¶ 62.

[48] *Id.*

[49] *Id.* ¶ 65.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.* ¶ 66.

[54] *Id.* ¶¶ 67–68.

[55] *Id.* ¶ 68.

[56] *Id.*

[57] *Id.* ¶ 69.

[58] *Id.* ¶¶ 70–71.

[59] *Id.* ¶ 71.

[60] *Id.* ¶ 72.

[61] *Id.*

[62] *Id.*

[63] *Id.* ¶¶ 73–75.

[64] *Id.* ¶ 75.

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.* ¶ 101.

[71] *Id.* ¶ 103.

[72] *Id.* ¶ 104.

[73] *Id.* ¶ 105.

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.* ¶ 106.

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.* ¶ 107.

[85] *Id.*

[86] ECF No. 807

[87] *Id.* at 12–50.

[88] *Id.* at 61–67, 70, 72.

[89] ECF No. 1433 at 3:4–9. The offense level axis in the Sentencing Guidelines table ends at forty-three. Judge Buckwalter treated Mr. Martines's offense level as forty-three. *Id.*  Mr. Martines does not argue, and we have no basis to find he could argue, for a lower offense level under present Guidelines.

90 *Id.* at 4:22–5:2. Mr. Martines told Judge Buckwalter "I have never struck anyone with a bat, a pipe, stabbed anyone or shot anyone or inflicted any physical injury with any instrument of crime." *Id.* at 23:15–21.

91 *Id.* at 10:9–14.

92 *Id.*

93 *Id.* at 28:4–15.

94 *Id.* at 27:18–24.

95 ECF No. 1410.

96 ECF No. 1425.

97 *United States v. Martines*, 159 F.3d 1354 (3d Cir. 1998).

98 *Martines v. United States*, 525 U.S. 1161 (1999).

99 ECF No. 2001.

100 *Id.* at 4–11.

101 *Id.* 12–23.

102 *See id.* at 2.

103 *United States v. Martines*, No. 94-127, 2021 WL 427285 (E.D. Pa. Feb. 8, 2021).

104 *Id.* at *5.

105 *Id.* at *6. Mr. Martines also argued he presented less of a danger to the community than an Enterprise associate whom we denied compassionate release. ECF No. 2001. We found Mr. Martines, as the Enterprise's underboss, played a more significant role to orchestrate murders of rival gang members than did the Enterprise's bombmaker. *Martines*, 2021 WL 427285, at *7.

106 ECF No. 2024-1.

107 *Id.* at 1–2.

108 *Id.* 2.

109 *Id.* at 5–8.

110 *Id.* at 10.

[111] *Id.*

[112] *Id.*

[113] *United States v. Martines*, No. 94-127, 2022 WL 837243 (E.D. Pa. Mar. 21, 2022).

[114] *Id.* at *2–5.

[115] *Id.* at *7–8. The Sentencing Commission issued policy statement section 1B1.13(b) defining extraordinary and compelling reasons based on the incarcerated person's medical condition or age. U.S.S.G. §§ 1B1.13(b)(1), 1B1.13(b)(2). The Commission's Medical Note requires the incarcerated person show they suffer from a serious physical or medical condition, suffer from a serious functional or cognitive impairment, or are experiencing deteriorating physical or mental health because of the aging process and the argued condition substantially diminishes the incarcerated person's ability to provide self-care in the correctional facility. U.S.S.G. § 1B1.13(b)(1). The Commission's Age Note requires the incarcerated person show they are at least sixty-five years old, are experiencing a serious deterioration in physical or mental health from aging, and have served at least ten years' imprisonment or at least seventy-five percent of their term of imprisonment, whichever is less. U.S.S.G. § 1B1.13(b)(2).

[116] *Martines*, 2022 WL 837243 *9–12.

[117] *Id.* at *9.

[118] *Id.* at *11.

[119] *Id.*

[120] *Id.* at *12.

[121] *Id.*

[122] ECF No. 2042.

[123] 18 U.S.C. § 3582(c)(1)(A).

[124] *Id.* § 3553(a)(1)–(2).

[125] *Id.* § 3553(a)(5)(A).

[126] *Id.* § 994(a)(2)(C).

[127] U.S.S.G. § 1B1.13(a)(2).

[128] *Id.* at 5–14.

[129] *Id.*

[130] *Id.* at 6–7.

[131] *Id.* at 10.

[132] *Id.* at 13.

[133] ECF No. 2050 at 1–9.

[134] *Id.* at 10–17.

[135] ECF No. 2050 at 12–13; *Martines*, 2021 WL 427285*; Martines*, 2022 WL 837243.

[136] *Id.* at 8–9.

[137] ECF No. 2053 at 2–6.

[138] *Id.* at 14–22.

[139] *See* ECF Nos. 2042, 2053.

[140] ECF No. 2042 at 22–28. "Further, no one knows, or can know, that Judge Buckwalter's weighing of the sentencing factors wouldn't have resulted in a 20–30-year sentence which the Government conditionally approved." *Id.* at 28.

[141] *Id.* at 35–36.

[142] *Id.* at 36.

[143] *Commonwealth v. Martines*, No. 09-5052 (Bucks Ct. Com. Pl. Jan. 23, 1996).

[144] *Commonwealth v. Martines*, No. 09-474 (Bucks Ct. Com. Pl. Apr. 2, 1998).

[145] ECF No. 16, *United States v. Martines*, No. 99-157 (D.N.J. June 7, 1999).

[146] ECF No. 19, *United States v. Martines*, No. 99-157 (D.N.J. Sept. 9, 1999).

[147] *Commonwealth v. Martines*, No. 09-4673 (Bucks Ct. Com. Pl. Oct. 1, 1999).

[148] *Commonwealth v. Martines*, No. 51-11631 (Phila. Ct. Com. Pl. Sept. 2, 2010).

[149] *Id.*

[150] *Commonwealth v. Martines*, No. 51-5539 (Phila. Ct. Com. Pl. Mar. 20, 2024).

---

[151] *Id.*

[152] 18 U.S.C. § 3582(c)(1)(A).

[153] *Id.* § 3553(a)(5)(A).

[154] U.S.S.G. § 1B1.13(a)(2).

[155] *Martines*, 2022 WL 837243, at *9–*12.

[156] *Id.*

[157] *Id.* at *11.

[158] ECF No. 2053 at 8–9.

[159] ECF No. 2042

[160] ECF No. 2053 at 2–6.

[161] Mr. Martines attempts to prove a negative: "[f]urther, no one knows, or can know, that Judge Buckwalter's weighing of the sentencing factors wouldn't have resulted in a 20-30 year sentence which the Government conditionally approved." *Id.* at 28.

The counterfactual to Mr. Martines's argument is equally availing. The Sentencing Guidelines recommend life imprisonment for a convicted person presenting an offense level of forty-three or greater and a criminal history score of zero. Mr. Martines does not argue he would have a different offense level today. A sentencing judge today reviewing the Guidelines' recommended sentence of life imprisonment may well sentence Mr. Martines to life imprisonment.

[162] *Id.* at 25 (citing *United States v. Booker*, 543 U.S. 220 (2005)).

[163] ECF No. 1433 at 27:25–28:1 ("And with or without the guidelines, I would impose a very stiff penalty.").

We considered Congress's section 3553(a) factors in our February 8, 2021 and March 21, 2022 Memorandum Opinions. *Martines*, 2021 WL 427285, at *6 ("Consideration of the Section 3553(a) sentencing factors further weighs against Mr. Martines's release."); *Martines*, 2022 WL 837243 at *12 ("But we cannot justify release under the [section 3553(a)] factors set by Congress. Mr. Martines is a convicted murderer, among other offenses, and a key member of an organized crime ring. Judge Buckwalter sentenced him to life imprisonment for his offenses.").

[164] Mr. Martines argues Judge Block's decision in *United States v. Russo* granting a captain in an organized crime enterprise compassionate release requires we do the same. ECF No. 2042 at 16–17; ECF No. 2053 at 3–4. The incarcerated person in *Russo* received a life sentence for his role in

24

a murder conspiracy killing two members of a rival organized crime enterprise during an organized crime war. *United States v. Russo*, 643 F. Supp. 3d 325, 331 (E.D.N.Y. 2022). The incarcerated person served as a captain within the organized crime enterprise. *Id.* Judge Block granted the incarcerated person compassionate release finding the incarcerated person did not commit a disciplinary infraction while in prison and posed no danger to the community because the killings "were internecine executions of ruthless rival gang members." *Id.* at 332, 335.

Mr. Martines argues Judge Schofield releasing two organized crime enterprise leaders convicted of murder and attempted murder requires we do the same. *United States v. Tellier*, No. 92-869, 2022 WL 1468381 (S.D.N.Y. May 10, 2022); *United States v. Tellier*, No. 92-869, 2023 WL 5498909 (S.D.N.Y. Aug. 25, 2023). The incarcerated persons in the *Tellier* decisions led an organized crime enterprise. *Tellier*, 2022 WL 1468381, at *1; *Tellier*, 2023 WL 5498909, at *1. A jury convicted both of, among other things, murder. *Id.* Judge Schofield granted compassionate release finding rehabilitation through their expressions of remorse. *Tellier*, 2022 WL 1468381 at *4 ("By all accounts, Defendant expresses deep regret for the decisions he made and suffering he caused. He has expressed remorse in his letter to the court, to friends, family and current inmates, and uses his mistakes to guide others in the right direction."); *Tellier*, 2023 WL 5498909 at *5 ("Defendant is now sixty-three years old, suffers from a serious, chronic heart condition and is deeply remorseful for his very serious offenses.").

The breadth of Mr. Martines's supervisory role in Philadelphia's La Cosa Nostra Enterprise is greater than the incarcerated person Judge Block compassionately released in *Russo*. Mr. Martines served as the Enterprise's second-in-command as its underboss. Presentence Investigation Report ¶ 10 (June 13, 1996). Mr. Martines six times assembled Enterprise associates into hit crews to commit murder. *Id.* ¶¶ 27, 47, 48, 61, 65, 67–68, 70–71. The incarcerated person in *Russo* conversely served as a captain or caporegime in the charged organized crime enterprise. *Russo*, 643 F. Supp. 3d at 331. Captains report to underbosses. Presentence Investigation Report ¶ 11 (June 13, 1996). The incarcerated person in *Russo* assembled one hit crew to carry out one murder. *Russo*, 643 F. Supp. 3d at 331–32. Mr. Martines's great supervisory role in the Enterprise and his ordering several murders weigh against granting his compassionate release.

Mr. Martines fails to convey the level of remorse Judge Schofield reviewed in the *Tellier* cases. Mr. Martines previously argued we exaggerated the extent of his crimes and denied his role in Philadelphia's La Cosa Nostra Enterprise. ECF No. 2024-1 at 10. Mr. Martines now argues Judge Buckwalter's alleged failure to consider Congress's section 3553(a) factors requires we grant him compassionate release. ECF No. 2042 at 22–28. Conversely, the incarcerated persons Judge Schofield granted compassionate release demonstrated remorse for their crimes. *Tellier*, 2022 WL 1468381 at *4 (noting the incarcerated person's expression of remorse to Judge Schofield, friends, family, and incarcerated persons); *Tellier*, 2023 WL 5498909 at *5 (describing the incarcerated person as "deeply remorseful"). Mr. Martines does not demonstrate remorse and expresses the opposite by twice arguing the merits of his convictions.

---

[165] *United States v. Spencer*, 519 F. Supp. 3d 237, 244 (E.D. Pa. 2021) ("Hence, each case must be determined by the facts unique to the defendant."). Mr. Martines admits "[o]f course, it would not be unusual that different courts balance the Section 3553(a) factors differently." ECF No. 2053 at 6.

[166] Presentence Investigation Report ¶ 10 (June 13, 1996).

[167] *Id.* ¶ 23.

[168] *Id.* ¶ 50.

[169] *Id.* ¶ 43.

[170] *Id.* ¶¶ 27–45, 47–52.

[171] *Id.* ¶¶ 62, 66, 69, 72.

[172] *Id.* ¶¶ 73–74, 75.

[173] *Id.* ¶¶ 101–107.

[174] ECF No. 2042 at 35–36.

[175] *Id.* at 36.

[176] *Commonwealth v. Martines*, No. 51-5539 (Phila. Ct. Com. Pl. Mar. 20, 2024).

[177] ECF No. 19, *United States v. Martines*, No. 99-157 (D.N.J. Sept. 9, 1999).